UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61029-RAR

LATOYA RATLIEFF,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE,
FLORIDA, *et al.*,

    Defendants.
_____/

## JOINT DISCOVERY STATUS REPORT

Pursuant to the Court's Order (DE 111), the Parties (Cristafaro, Dietrich, Greenlaw, Figueras, MacDoughall, Ratlieff, and Ramos) file this Joint Discovery Status Report (JSR):

## REQUEST FOR INTERROGATORIES

Request No. 1: Identity specific video footage by time stamp, including BWC footage or undercover footage, supporting any contention of violence at the corner of SE 2nd Street and SE 1st Ave on May 31, 2020, during the following time periods:

a. From 6:51pm ET to 6:52 pm ET
b. From 6:52 pm ET to 6:59 pm ET
c. From 7:00 pm ET to 7:01:25 pm ET
d. From 7:01pm ET to 7:07:30 pm ET

Response from Cristafaro, Dietrich, Greenlaw, Figueras, MacDoughall:

Defendant objects to Plaintiff's interrogatories 1 and 2 as seeking mental impressions of counsel and legal defense strategy. Additionally, Defendant objects as overly broad, unduly burdensome, irrelevant to and not proportionate to the discovery needs or issues in this case. In order to respond to these interrogatories, Defendant and his attorneys would have to jointly review hours and hours of body worn camera footage ("BWC")(over days) of approximately 40 different officers, social media and news footage, and cell phone video to locate any such portions that capture footage at SE 2nd Street and SE 1st Avenue, and further assess whether those portions depicted certain acts at very specific times outlined in the interrogatory questions. Plaintiff is in possession of all BWC footage, news and social media videos and video produced by the City of Fort Lauderdale in its discovery responses. The content of the videos speak for themselves and having an individual defendant spend an inordinate amount of time to give commentary on what can be seen by any viewer is unreasonable.

Response from Ramos:

Defendant, Ramos, objects to Plaintiff's interrogatories 1 and 2 as overbroad, unduly burdensome and as both disproportional and irrelevant to the discovery needs or issues in this case. In order to respond to these interrogatories, Officer Ramos and his attorneys would have to jointly review tens of hours of body worn camera footage (over days) of approximately 40 different officers to locate any portions, no matter how brief, that capture footage at SE 2nd Street and SE 1st Avenue, and further assess whether those portions depicted certain acts at very specific times outlined in the interrogatory questions. This serves no valid purpose as Ramos is not contending that he discharged his weapon in the direction of Plaintiff in response to general numerous violent acts of others, but instead in direct response to a specific violent act: a rioter located in close proximity to Plaintiff throwing a metal canister at police officers. That specific violent act is depicted on the Rose body camera video and was shown at Plaintiff's deposition and attached as an exhibit. Ramos, at the time, was under orders from his supervisors to utilize less-lethal rounds at violent offenders, and that is precisely what he did in this instance, unfortunately striking Plaintiff (who was moving and stepped down off a curb) instead of the violent offender. To the extent Plaintiff's attorneys desired for Ramos to comment on any specific video, they could have presented it to him at his deposition, as Ramos' attorney did when deposing Plaintiff. The content of the videos speak for themselves and having an individual defendant spend this inordinate amount of time to give commentary on what can be seen by any viewer is

| | | |
|---|---|---|
| unreasonable. Moreover, the City has produced the body camera of Officer Rose, which depicts the violent offender and the subject incident. | | |
| Movant's Position: | Opponent's Position: | [LEAVE BLANK FOR COURT USE] |
| The police reports, Internal Affairs Statements, and now discovery depositions are rife with allegations of violence by demonstrators at the corner of SE Second Street and SE First Avenue during the Fort Lauderdale May 31, 20220, George Floyd protests. The testimonial evidence about the timeline of this purported "violence" is vague. During the City's 30(b)(6) testimony, its corporate representative identified the specific video footage supporting any claims of violence during these time periods. The City did not object. This interrogatory, in effect, gives the individual defendants the opportunity to provide a different answer, identify other video footage, or stand by their employer's | Defendant Ramos<br><br>In this action relief is sought against Defendant Ramos for a single act. Specifically, it is alleged that Defendant Ramos fired a kinetic impact projectile which struck Plaintiff Ratlieff in the face causing her injury. (ECF 102 at ¶¶130-138) Defendant Ramos has testified that, and video and audio evidence corroborates that he was instructed by supervisors to fire kinetic impact projectiles as persons who were attacking the police by throwing objects at them. Defendant Ramos has identified for Plaintiff's counsel video/audio evidence which shows that a person threw a teargas canister at the police and that Ramos attempted to strike the attacker with a kinetic impact projectile which | |

| | | |
|---|---|---|
| articulation of what the physical video evidence shows.<br><br>Plaintiff tendered these contention interrogatories near the close of discovery (and after the City already identified specific video footage supporting any contention of violence at the corner of SE Second Street during these times). Given that this is the close of discovery, there is no burden in asking the individual defendants to identify any video evidence supporting their contentions of violence during the above time periods. | unfortunately struck Plaintiff Ratlieff as she moved in front of the attacker.  Defendant Ramos does not assert that he fired the kinetic impact projectile because of any other generalized violence which was occurring at the location. Defendant Ramos has identified the audio and video evidence which does relate to his actions. Defendant Ramos's interpretation of video evidence which is available to Plaintiffs counsel is not relevant to the claims or defenses which relate to him, and it would be unduly burdensome for Defendant Ramos to spend dozens of hours reviewing the video evidence which is not in any way pertinent to the claims asserted against him.  The request is not relevant, is unduly burdensome, is not proportional to the issues in the case and no authority exists to support requiring Defendant Ramos to engage in the unnecessary exercise requested by Plaintiff's counsel. | |

4

|  | Response from Non-Ramos individual Defendants:<br><br>As the Defendants stated in their objections, in order to respond to these interrogatories, each of these Defendants and his attorneys would have to jointly review hours and hours of body worn camera footage ("BWC")(over days) of approximately 40 different officers, social media and news footage, and cell phone video to locate any such portions that capture footage at SE 2nd Street and SE 1st Avenue, and further assess whether those portions depicted certain acts at very specific times outlined in the interrogatory questions. Plaintiff is in possession of all case supplement reports reflecting the observations of Defendants on scene, in addition to BWC footage, news and social media videos and video produced by the City of Fort Lauderdale in its discovery responses. The content of the videos speak for themselves and having an individual defendant spend an inordinate amount of time to give commentary on what can be seen by any viewer is unreasonable. Additionally, both Douglas MacDoughall and Steven |  |

|  | Greenlaw were not even at the scene of the incident as they were in the Command Center at the police station and would not have first-hand accounts of any actions of the agitators.<br><br>Finally, Plaintiff's interrogatory seeks the legal defense strategy that would be employed by reviewing any video footage for the purpose of responding to the inquiry. |  |

| Request No. 2: Identify all documents, videos, and evidence of any kind, which supports your contention of civilian violence toward officers at the corner of SE 2nd Street and SE 1st Ave on May 31, 2020, during the following time periods:<br>a. From 6:51pm ET to 6:52 pm ET<br>b. From 6:52 pm ET to 6:59 pm ET<br>c. From 7:00 pm ET to 7:01:25 pm ET<br>d. From 7:01pm ET to 7:07:30 pm ET.<br><br>Response: **(a. – d.). See Response No. 1.** |||
|---|---|---|
| Movant's Position:<br><br>Same | Opponent's Position:<br>Defendant Ramos<br><br>Same | [LEAVE BLANK FOR COURT USE] |