UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 0:22-cv-61029-RAR

**LATOYA RATLIEFF**,
    Plaintiff,

vs.

**CITY OF FORT LAUDERDALE,**
**FLORIDA,** et al.,
    Defendants.
_____/

**PLAINTIFF'S REPLY TO THE CITY AND SUPERVISING DEFENDANTS'
RESPONSE IN OPPOSITION (DE169) TO HER MOTION FOR PARTIAL SUMMARY
JUDGMENT (DE159), WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff LaToya Ratlieff files her reply to Defendants' Paul Cristafaro, Steve Greenlaw, Avery Figueras, Douglas MacDoughall, Robert Dietrich, Rick Maglione (collectively, the "Defendant Supervisors"), and the City of Fort Lauderdale ("City") response in opposition to her motion for partial summary judgment (DE169).

### ARGUMENT

**I. Ms. Ratlieff has established First Amendment Retaliation and the defendant's same-decision defense fails as a matter of law – Counts III, IV.**

The City and Defendant Supervisors suggest the Supreme Court's *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)*,* burden shifting test does not apply to law enforcement. This is incorrect. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019), confirms the applicability of *Mt. Healthy*'s burden-shifting test to First Amendment retaliatory claims against law enforcement.

    **A.**     **Ms. Ratlieff was engaged in First Amendment Protected Speech; she was subjected to adverse actions by the police that chilled her speech.**

The City and Defendant Supervisors concede Ms. Ratlieff was engaged in lawful speech and assembly (DE169:3). They fail to identify any material factual disputes as to whether FLPD's

conduct adversely affected her First Amendment activities. Ms. Ratlieff seeks partial summary judgment on two of the adverse actions at the Parking Garage that would and did chill speech: 1) FLPD's dispersal of her assembly; and 2) the specific deployment of tear gas by John Doe 1 at 7:07:27 to disperse the group of six people assembled with her on the sidewalk (DE159:8).

Defendant Supervisors contend Ms. Ratlieff cannot prevail because she is unable to provide evidence of who personally deployed the tear gas (including John Doe 1) or KIPs that affected her and that they directed that specific deployment (DE169:4-5). The same argument was advanced in *Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010). The Eleventh Circuit concluded the "argument [was] without merit," because it was "irrelevant which officer inflicted injury or the constitutional violation, so long as the violation was at the direction of [the supervisors]." *Id*.

The City and Supervising Defendants further contend "the deployment of tear gas or impact projectiles in response to acts of violence" and argue this would not deter peaceful protesters (DE169:3). The argument is non-responsive. Ms. Ratlieff seeks summary judgment on her allegation that FLPD stopped her speech and assembly, when they dispersed the crowd.

### B. No reasonable juror could find there was no causal connection between the exercise of First Amendment rights and the speech.

The City and Defendant Supervisors further fail to identify any genuine disputes as to whether the assembly at the Parking Garage was one of the motivating factors in FLPD's plan to clear the intersection with tear gas and KIPs. The City and Defendant Supervisors did not disavow, by affidavit or other testimony, the evidence that Field Force was deployed to the intersection with the intent to disperse the entire crowd (DE158:7, PSMF ¶ 45). Their contention that FLPD officers targeted individuals throwing tear gas back at FLPD creates no disputed issue of fact for jury resolution as to whether one of FLPD's motivations was to disperse the crowd. The two objectives are not mutually exclusive. SWAT Leader Defendant Cristafaro, who communicated the directive,

explained that the motivation for targeting people who threw tear gas back was tied to the larger purpose of dispersing the entire crowd (Ex. 7, DE156-7, Cristafaro Dep. 57:5-10).

The other Supervising Defendants in the chain of command, including Chief of Police Defendant Maglione, SWAT Commander Defendant Greenlaw, Field Force Commander Defendant Dietrich, and SWAT Executive Leader Lieutenant Figueras, provided similar testimony tying the deployment of tear gas and KIPs to the lager goal of dispersing the crowd (Ex. 7, DE156-7, Cristafaro Dep. 57:5-10; Ex. 18, DE156-18, Figueras Dep. 67:22-68:3; Ex. 21, DE156-21, Dietrich Dep. 61:7-12; Ex. 16, DE156-16, Email from Def. Maglione to Dodson (June 2, 2020); Ex. 41, DE156-41, Greenlaw Dep. 64:10-15, 65:21-25).

"The opinion in *Mt. Healthy* clearly contemplates that a decision may be the product of more than one substantial factor; it refers to 'a substantial factor.'" *Leonard v. Columbus*, 705 F.2d 1299, 1304 (11th Cir. 1983) (quoting *Bowen v. Watkins*, 669 F.2d 979, 984-85 (5th Cir.1982)). To create an issue of fact as to a causal connection, the City and Supervising Defendants were required to present evidence establishing the crowd's assembly was not a motivating factor. They have not.

The analysis should end here. Since Field Force deployed to the Parking Garage for the express and purpose of systematically dispersing the assembly, no reasonable juror could find that the assembly's gathering and subsequent dispersal were entirely unrelated.

### 1. *Supervising Defendants Arguments on Supervisory Liability.*

Ms. Ratlieff separately addresses the Supervising Defendants' individual liability in Section IV of her partial motion for summary judgment, because the existence of a constitutional law violation is different from the question of whether the Defendant Supervisors are liable for that constitutional injury. The Supervising Defendants, however, attempt to conflate the two, arguing the absence of a constitutional violation, because they are not liable. Under *Keating v. City*

*of Miami*, 598 F.3d 753, 765 (11th Cir. 2010), the Defendant Supervisors are liable so long as they "(1) [had] the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who [were] commit[ting] the constitutional violation, and (2) subsequently fail[ed] to exercise that authority to stop it." The Supervising Defendants do not address these elements, responding instead with a kitchen sink of arguments supported by no case law.

Supervising Defendants Chief Maglione, Captain Greenlaw, and Assistant Chief MacDoughall claim they cannot be liable since they were not on scene (DE169:6). Not so. "Supervisory liability allows for a defendant to be held liable even if he or she is not present at the scene of the deprivation if . . . the 'facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.'" *Poor & Minority Justice Ass'n v. Chief Judge*, No. 8:19-cv-2889-T-02TGW, 2020 U.S. Dist. LEXIS 167438, at *4-5 (M.D. Fla. Sep. 14, 2020) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)).

The Supervising Defendants try to disclaim liability because they did not see Ms. Ratlieff or know she was present (DE169:6). This is an irrelevant fact. In the Eleventh Circuit, "a First Amendment claim does not rely on the identification of an individual" affected by targeted law enforcement action aimed at dispersing a crowd. *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Specific knowledge of the victims of unconstitutional force is not one of the two elements of supervisory liability. Nor does it make it more or less likely that the Supervising Defendants had the ability to prevent or discontinue the unconstitutional dispersal.

The Supervising Defendants further argue that Defendant Ramos's IA testimony, wherein he cited the crowd's speech as the reason why he determined the crowd was 60% violent, as well

as similar testimony from SWAT Lieutenant Ronald Magno,[1] SWAT Member Smith, and SWAT Member Herbert, cannot be imputed to them since they were not final policymakers or supervisors (DE169:6). The argument misapplies the evidence. This evidence establishes the constitutional violation, here the undisputed evidence of a causal connection between the speech and the dispersal. The Supervising Defendants are liable, at a minimum, because of their failure to stop the known constitutional violations.

Field Force Captain Defendant Dietrich admits he was in the approval process but contends he never approved tear gas and KIPs (DE169:6). This is an irrelevant fact. Dietrich was a direct participant and he failed to stop the dispersal. He knew the purpose of Field Force's deployment to the Parking Garage was to disperse the crowd (PSMF ¶ 45; DRPSMF ¶ 45). He knew tear gas and KIPs were being deployed to clear out the intersection of SE Second Street and SE First Avenue (Ex. 21, DE156-21, Dietrich Dep. 61:7-12). Dietrich had the authority and ability to stop the use of tear gas and KIPs, but he took no steps to stop their deployment (Ex. 21, DE156-21, Dietrich Dep. 57:5-13).

SWAT Executive Leader Lieutenant Figueras contends he "stated the use of less lethals was when someone picked up gas canisters or were causing riot-type situations." (DE169:6). Lieutenant Figueras is liable, at a minimum, because he failed to stop the deployment. Figueras knew KIPs were deployed to disperse the crowd and prevent individuals from thwarting their dispersal efforts (Ex. 18, DE156-18, Figueras Dep. 67:22-68:3). Figueras saw people injured by tear gas and KIPs as he heard winces and owes, followed by f**k you and people then dispersing.

---

[1] SWAT Lieutenant Magno is the person who can be heard on his body camera screaming "F***ing, trample that Motherf****er" when Ms. Ratlieff was shot (Ratlieff Shooting Synchronized Video at 2:45-2:52).

(Ex. 18, DE156-18, Figueras Dep. 104:11-16). He had the authority and ability to stop the use of tear gas and KIPs, but took no steps to stop their deployment (*Id*. at 96:3-24).

### 2. *Cases relied on by the Supervising Defendants and the City.*

Defendants further misrely on *Secot v. City of Sterling Heights*, 985 F. Supp. 715, 716 (E.D. Mich. 1997), and *Ellsworth v. City of Lansing*, No. 99-1045, 2000 U.S. App. LEXIS 2049, at *2 (6th Cir. Feb. 10, 2000), because they did not involve a dispersal of a crowd. In fact, in *Secot*, police allowed the picketing union members who were striking to assemble, "only requiring strikers to clear the driveways leading in and out of the plant once every hour to allow traffic to pass." The plaintiffs in *Ellsworth* were not even union workers. *Ellsworth*, No. 99-1045, 2000 U.S. App. LEXIS 2049, at *3. They were affected by tear gas that drifted through the residential neighborhood.[2]

**C.   Ms. Ratlieff is entitled to summary judgment on the Defendants' "same decision" affirmative defense, where they cannot produce evidence that they would have taken the action even in the absence of the peaceful assembly.**

The Supervising Defendants and the City fail to provide sufficient evidence to establish a genuine issue of material fact as to whether their employees and subordinates would have made the same decision had there been no crowd assembled. It is evident the events would have unfolded differently if there were no crowd assembled. Without a crowd, there would have been no need to disperse, much less to disperse using tear gas and KIPs.

Specifically, as to the tear gas deployment by John Doe 1, the City and Supervising

---

[2] Defendants contend the First Amendment does not protect against retaliation for shoving or striking a police officer (DE169:7). Defendants miss the point. If the deployment of tear gas was lawful, then the police should have arrested those who threw the tear gas back. "Under Supreme Court precedent, a peaceful political protester may not be punished for failing to cease his protected activity simply because others associated with the assembly may have committed illegal acts." *Carr v. District of Columbia*, 561 F. Supp. 2d 7, 14-15 (D.D.C. 2008).

Defendants admit they lack evidence regarding John Doe 1's subjective motivation for deploying tear gas (DE169:8). Consequently, the City and Supervising Defendants cannot present any evidence to the jury in support of a same decision defense regarding John Doe 1's tear gas deployment. Therefore, at the very least, Ms. Ratlieff is entitled to summary judgment regarding any same decision defense related to John Doe 1's singular deployment of tear gas.

Regarding the general deployment of tear gas and KIPs, the City and Supervising Defendants assert that the deployment of tear gas and KIPs were "in response to criminal acts of violence." (DE169:8). But they offer no evidence much less claim that tear gas and KIPs are the standard protocol for addressing criminal acts of violence outside crowd control settings. Defendants cannot confront their own expert's admission that if, for instance, the 50+ field force line encountered only two individuals throwing objects without the presence of a crowd, the FLPD would have simply dispatched two arrest teams to apprehend each person (Defense Expert Ryan Dep. 195:24-7). Furthermore, the City and Supervising Defendants conceded that the decision not to arrest the "few" individuals purportedly throwing objects was influenced by the size and presence of the crowd, as arresting them might have resulted in law enforcement being surrounded by the crowd they did not trust (PSMF ¶¶ 105-06; DRSPMF ¶¶ 105-06). So, even under their alternative justification for deploying force, no jury could find FLPD would have taken the same actions absent the crowd's presence.

The City and Supervising Defendants attempt to reframe the issue as whether they would have acted the same way if one less person—Ms. Ratlieff—were not present. They are wrong. First, an assembly of one is not an assembly. Assessing FLPD's hypothetical actions without Ms. Ratlieff's assembly necessitates consideration of the entre peaceful assembly as a unit. Secondly, FLPD themselves acknowledged that only a "few agitators" (PSMF ¶¶ 105-06; DRSPMF ¶¶ 105-

7

06) were throwing objects, while the rest of the crowd was peaceful and lawful. Therefore, the same decision defense must evaluate whether FLPD's actions would have been identical if they had encountered only a "few agitators" without the presence of the larger peaceful assembly. The answer, as their expert readily conceded, is obviously no.

### 1. *Conduct in violation of Florida law cannot be proffered as a legitimate, nonretaliatory reason.*

The City and Supervising Defendants did not respond to this contention.

### 2. *There is no disputed issue of fact that in the absence of the crowd, the police would have simply arrested the few agitators.*

The City and Supervising Defendants did not respond to this contention.

### 3. *FLPD deployed tear gas and KIPs without warning even after rocks and bottles stopped being thrown.*

The City and Supervising Defendants argue that the lack of evidence regarding the justification for deploying the 200 rounds of munitions is inconsequential (DE169:9). Not so. They claim force was only used against the few individuals who threw objects. Yet, the objective evidence, including the John Doe 1 round and other instances of FLPD officers joking and laughing about their deployments, suggests otherwise. Without evidence to support the justifications for deploying force, the City and Supervising Defendants—especially those who were not on scene—lack any admissible evidentiary basis for the jury to conclude that force was solely deployed against individuals throwing objects.

## II.   The procedural rights of Ms. Ratlieff were violated when FLPD used force to disperse the crowd with no warning or dispersal order – Counts XIV, XV.

Defendants fail to address crucial aspects of Florida's Riot Act, mandating law enforcement notify the crowd of their determination that the assembly is deem unlawful, issue an order to disperse, and provide an opportunity to comply (PSMF ¶ 120, DRPSMF ¶ 120). Despite Ms.

Ratlieff's detailed exposition of the Riot Act's historical background, including its origins in English law and its application in American history, defendants offer no rebuttal. Moreover, they admit to the procedural policy mandated by Florida law is an undisputed fact (PSMF ¶ 120, DRPSMF ¶ 120). However, they attempt to justify their failure to comply with the Riot Act by claiming they were confronted with violence. This argument contradicts the statute's clear requirement for law enforcement to read the Riot Act "if any number of persons, whether armed or not, are unlawfully, riotously, or tumultuously assembled." § 870.04, Fla. Stat. Defendants fail to identify any statutory exceptions or case recognizing an exception and provide no explanation of how violence by a crowd would not trigger the Riot Act's provisions.

The Defendants concede that on the day in question, Ms. Ratlieff had a recognized fundamental liberty interest in demonstrating on the public street set aside for her use by FLPD to demonstrate against police brutality. They respond there was no deprivation of Ms. Ratlieff's First Amendment rights (DE169:10). This assertion is baseless. It is undisputed that the deployment of tear gas and KIPs resulted in people leaving (PSMF ¶¶ 59, 64-65; DRSMF ¶¶ 59, 64-65), which was Field Force's undisputed intent (PSMF ¶ 45; DRSMF ¶ 45). Ms. Ratlieff's lawful activities were forcibly halted by FLPD when she was tear-gassed and shot in the face by a KIP during the dispersal (PSMF ¶ 78, 91).

The Defendants further argue that Ms. Ratlieff had a post-deprivation remedy, yet they fail to specify what remedy (DE169:10). Nonetheless, it is well-established law that where government "feasibly" can provide due process, they "generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate" for the deprivation. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). In the Eleventh Circuit, the acceptability of post-deprivation process hinges on the feasibility of pre-deprivation process. *Carcamo v. Miami-Dade Cty.*, 375 F.3d 1104, 1105 n.4

(11th Cir. 2004).

Here, the Defendants fail to present any factual questions regarding the feasibility of providing due process. The undisputed evidence shows that they had a pre-recorded dispersal order, that the LRAD device could project as far as eight blocks, and that the Field Force took the LRAD with them to the Parking Garage (PSMF ¶¶ 113, 115, 117-18; DRPSMF ¶¶ 113, 115, 117-18). But FLPD did not issue a dispersal order as a matter of Department policy (PSMF ¶¶ 121-22; DRPSMF ¶¶ 121-22). This policy violated the express terms of Florida law as well as centuries of well-established legal principles (PSMF ¶ 120; DRPSMF ¶ 120). Under *Barr v. Johnson*, 777 F. App'x 298, 303 (11th Cir. 2019), permitting the Defendants to argue that a post-deprivation remedy was sufficient, despite the undisputed evidence that it could feasibly read the Riot Act, "would be gutting any notions of predeprivation due process and blanketly holding that a state can effectuate any and all deprivations under a 'shoot first, ask questions later' mentality, so long as it offers ex post facto recourse."

The Defendants further purport to incorporate their summary judgment claim that Ms. Ratlieff failed to overcome their qualified immunity defense on procedural due process (DE169:12), forgetting that they sought summary judgment and qualified immunity on a version of the facts unsupported by any view of the record (that they complied with Florida Riot Act and **only** deployed force against persons engaged in violence).

The City and Supervising Defendants further take issue with Ms. Ratlieff's focus on the existence of a constitutional law violation (DE169:12), apparently forgetting the *Keating* and *Monell* analytical frameworks.

**III.   Ms. Ratlieff is entitled summary judgment on the question of the *Monell* liability for the constitutional deprivations alleged in Counts II (Unlawful Restriction on Speech), Count IV (First Amendment Retaliation), Count VI (Fourteenth Amendment**

**Violation); Count VIII (Fourth Amendment Violation); and Count XV (Procedural Due Process).**

**A.     Final policymakers authorized the deployment of tear gas and KIPs.**

The City does not dispute that the Chief of Police is a final decisionmaker or that he authorized the deployment of force to disperse demonstrators (DE169:15; PSMF ¶¶ 107-08, 128-29; DSMF ¶¶ 107-08, 128-29). The City tries to manufacture a factual dispute about the scope of the Chief's authorization by asserting that Defendant SWAT Leader Cristafaro sought approval to deploy tear gas for an officer rescue. However, they claim that before Chief Maglione could grant approval, Cristafaro had already spontaneously deployed the first round of tear gas (DE169:15). The narrative is demonstrably false.[3] Notwithstanding, this contrived narrative would not absolve the City of municipal liability. Even under this narrative, the Chief knew tear gas and KIPs were deployed at 6:55:08 p.m. with his authorization to disperse the crowd in support of the purported officer rescue (Ex. 16, DE156-16, Email from Def. Maglione to Dodson (June 2, 2020); Ex. 10, DE156-10, Maglione Dep. 74:16-20). The Chief further knew that the dispersal continued after the purported rescue (Ex. 10, DE156-10, Maglione Dep. 76:2-4).

The City's contention that the Chief's approval was not required cannot be squared with the fact that his approval was in fact sought (DE169:15). Moreover, it fails to address the undisputed evidence that the Chief of Police approved the deployment of tear gas and KIPs, fully aware of their use in dispersing the crowd. The City responds that the Chief's authorization of

---

[3] The deployment of force by FLPD was not spontaneous. Decision-making regarding tear gas deployment occurred after Detective Hayes exited her car (After Action Report at 24), with a two-minute gap between the announcement of gas deployment and its actual deployment (JS Held Expert Report at 16). Additionally, tear gas was already in the air upon Cristafaro's arrival (Ex. 12, DE156-12, Cristafaro City Corp. Rep. at 44:14-20). When asked whether the chemical agents were deployed during an "officer rescue," Cristafaro stated, "No." (Ex. 7, DE156-7, Cristafaro Dep. 90:15-17). He did not know where Detective Hayes was when he threw his first canister (Ex. 7, DE156-7, Cristafaro Dep. 90:12-14).

force was not enough to establish city policy unless the Chief approved in advance each of the 200 rounds FLPD deployed (DE169:16). Specifically, the City contends the Chief of Police was required to "approve" in advance "the particular locations" of the 200 rounds deployed, as well as each individual "instance[] where the gas or projectiles were to be deployed," (DE169:16). The City confuses the difference between policy creation and policy implementation. The Chief's approval of force to disperse the crowd was a policy and that policy, as implemented, was a moving force behind the constitutional violations alleged in the complaint.

The City further contends the Chief of Police did not stop the use of tear gas and impact projectiles as he was told the "officers were unable to extract themselves, were taking bricks, bottles, and explosives." (DE169:16). This claim creates no factual issue for jury resolution. First, the City in its Rule 30(b)(6) deposition conceded it does not contend in this litigation that rocks, bottles, bricks or fireworks or other explosives were thrown at law enforcement staged at the Parking Garage from 7:01 p.m. (Field Force's arrival) through 7:07:30 p.m. (when Ms. Ratlieff was shot) (Ex. 20, DE156-20, Swisher Dep. 64:4-9). Any claim that the Chief of Police authorized force in response to force—if true—refers to some other time period.

### B. FLPD officers had delegated authority to direct the deployment of KIPs and tear gas.

Since the Police Chief undisputedly gave the authorization himself, there was no delegation.

### C. As a matter of City Policy, no dispersal order was given.

The City creates no issue of fact for jury resolution as to the existence of an FLPD policy of not providing dispersal orders (DE169:20). They contend, with no evidence, that the assembly had never been deemed unlawful. Yet, the evidence shows otherwise. FLPD determined the crowd was unlawfully assembled (Ex. 18, DE156-18, Figueras Dep. 7-14). The City created no factual

dispute as to Ms. Ratlieff's contention that its officers determined the crowd was assembled unlawfully (PSMF ¶¶ 102-04; DRSMF ¶¶ 102-04). No dispersal order was issued, as required by Florida law, because of City policy.

The City further contends force was in response to violence against police officers (DE169:20), apparently forgetting the John Doe 1 round and the other video evidence of its officers laughing and joking as they deployed force. This creates no issue as to the existence of a policy of not giving dispersal orders.

FLPD next contends that its policy must be unconstitutional on its face, in order for municipal liability to attach. No so. It is "the officers' execution of official policy (or custom) [that] is the moving force of a constitutional violation" that subjects a municipality to liability. *Baker v. City of Madison*, 67 F.4th 1268, 1281-82 (11th Cir. 2023). Significantly, the City does not contend that its dispersal order policy was *not* a moving force behind Ms. Ratlieff's constitutional injuries (DE169:20). Nor can it. Had FLPD followed the statutory procedures outlined in the Florida Riot Act, no innocent people would have been struck. Anyone who stayed would have been subject to force. Moreover, the City's policy that disregarded the requirements of the Florida Riot Act in circumstances of violence is in fact an unconstitutional policy. Since King Edward VI's reign in 1549, the law has always been that law enforcement must read the Riot Act and give an opportunity to comply before they can deploy force at crowd with impunity. That law has been enshrined in Florida statutory law since at least 1868.

**IV.    There is no disputed issue of fact as to the individual defendants' liability for their part in the constitutional violations alleged in Counts III (First Amendment Retaliation) and Count XIV (Fourteenth Amendment Procedural Due Process).**

The allegations in Counts III and XIV revolve around the dispersal of peaceful demonstrators with tear gas and KIPs without prior warning or a dispersal order. The Supervising

13

Defendants' core response is that since there were no constitutional violations, they gave no unlawful orders and did not know of any constitutional violations to stop, so they are not liable under *Keating* (DE169:23-24). However, the undisputed evidence is that the Field Force Team was deployed to the Parking Garage for the specific purpose of dispersing the entire assembly (PSMF ¶ 45; DRPSMF ¶45).

They advance no argument on the *Keating* elements themselves, which only required evidence that they had "the ability to prevent or discontinue" the dispersal by tear gas and KIPs without warning or a dispersal order but failed to take action (DE169:23-24). In essence, beyond disputing the existence of a constitutional law violation, they do not contest the potential supervisory liability if their subordinates violated Ms. Ratlieff's rights. There are no genuine issues of material fact for jury resolution on *Keating* liability.

**V.  Ms. Ratlieff's injuries were a foreseeable consequence of dispersing a crowd containing peaceful demonstrators with tear gas and KIPs without a dispersal order.**

The City and Supervising Defendants present no evidence from which a jury could conclude that it was unforeseeable that Ms. Ratlieff—a peaceful demonstrator—would be injured by their deployment of tear gas and KIPs. The City and Supervising Defendants core response is that Ms. Ratlieff must first establish the commission of an underlying tort, implicitly conceding that if there were a constitutional violation, they are liable.

**VI.  No disputed issues of fact as to Ms. Ratlieff being battered – Counts X**

Ms. Ratlieff seeks partial summary judgment on the City's § 768.28(9)(a), sovereign immunity defense, because there are no disputed issues of fact that the City employees acted within the scope of their employment and lacked bad faith, malicious purpose, or willful disregard for human rights, safety, or property. The City did not respond or identify any fact issues.

Regarding the evidence of battery, the City argues that the Supervising Defendants and

Ramos did not commit battery against Ms. Ratlieff (DE169:25). However, this argument is dubious. Ms. Ratlieff was tear-gassed and struck by a KIP, facts undisputed in this case. Under Florida law, "All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him." *Vernon v. Medical Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1556 (S.D. Fla. 1996) (battery claim). The City failed to dispute the purpose of Field Force's deployment to the Parking Garage, which was to disperse the crowd (PSMF ¶ 45; PRSMF ¶ 45). They commenced dispersal of the crowd with force, deploying tear gas and KIPs, instead of issuing a dispersal order and providing an opportunity to disperse as required by the Florida without reading the Riot Act. Had they complied with Florida law and issued a dispersal order, they would have immunity.

## CONCLUSION

Ms. Ratlieff asks the Court to enter an order granting her partial summary judgment.

Respectfully submitted,

**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3105
Miami, FL 33131
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
johand@kuehnelaw.com

By:   *S/ Benedict P. Kuehne*
      **BENEDICT P. KUEHNE**
      Florida Bar No. 233293
      **MICHAEL T. DAVIS**
      Florida Bar No. 63374
      **JOHAN D. DOS SANTOS**
      Florida Bar No. 1025373

**RATZAN WEISSMAN & BOLDT**
2850 Tigertail Avenue, Suite 400
Coconut Grove, FL 33133
Tel: 305.374.6366
Fax: 305.374.6755
Stuart@rwblawyers.com
StuartW@rwblawyers.com
Kimberly@rwblawyers.com

By: *s/Stuart N. Ratzan*
   **STUART N. RATZAN**
   Florida Bar No. 911445
   **STUART J. WEISSMAN**
   Florida Bar No. 57909
   **KIMBERLY L. BOLDT**
   Florida Bar No. 957399

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify on February 16, 2024, I electronically filed this document with the Clerk using CM/ECF, and certify this document is served on all counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

                                          By:    *S/ Michael T. Davis*
                                                    **MICHAEL T. DAVIS**