UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-cv-61029-XXXX

LATOYA RATLIEFF,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE, et al.

    Defendants,

_____/

## DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF THEIR CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

Defendants, Paul Cristafaro, Steve Greenlaw, Avery Figueras, Douglas MacDoughall,, Robert Dietrich, Rick Maglione (collectively "Non-Ramos Officers"), and the City of Fort Lauderdale ("City"), by and through their undersigned counsel, pursuant to Rule 56, Fed. R. Civ. P., and Local Rules 7.1 and 56.1, S.D. Fla. L.R. 7.1, hereby reply to Plaintiff's Combined Response in Opposition to Motions for Summary Judgment (DE 170) ("Response"), and state as follows:

### Introduction

Defendants have replied to the factual assertions in Plaintiff's "Introduction" (DE 170 at 1-3), and hereby incorporate their reply to Plaintiff's statements. (DE 174 at ¶¶ 106-152, 165-168, 174-184, 118-119, 163-172, 143-144, 128-129, 151, 83, 56, 187-193, 80).

### I.    First Amendment Restriction (Counts I, II)

Plaintiff argues that she and other peaceful demonstrators "were in a public-forum set aside by FLPD for use by the demonstrators." (DE 170 at 4). However, that is incorrect with respect to the subject intersection at the relevant time. (DE 174 at ¶ 106). While the street had been blocked to allow for the movement of demonstrators leaving the concluded protest, there is no evidence it

1

was blocked for the purpose of providing a forum for further protest and demonstration. (*Id.*). Thus, the subject intersection where Plaintiff was during the relevant time period was not a traditional public forum. *See Keister v. Bell*, 879 F.3d 1282, 1291 (11th Cir. 2018) ("Neither are we persuaded by Mr. Keister's argument that because the intersection is open as a public thoroughfare, it is *per se* a traditional public forum."); *Keister v. Bell*, 29 F.4th 1239, 1255 (11th Cir. 2022) ("[T]he Supreme Court has not created a *per se* rule that sidewalks are traditional public fora simply because they are owned by a municipality … .").

However, even if the intersection is deemed a public forum, Plaintiff's Response does not address the Defendants' argument that the activity Plaintiff characterizes as *restrictions* on speech and assembly is part and parcel of what Plaintiff characterizes as *retaliation* for such speech and assembly. (DE 160 at 4-5; DE 170 at 3-4). Moreover, even if the intersection is deemed a public forum, there is no evidence establishing that the City or Non-Ramos Officers violated Plaintiff's First Amendment rights, for the same reasons discussed below and in Defendants' other summary judgment filings with respect to Plaintiff's First Amendment retaliation claim.

Plaintiff's reliance on *Toole v. City of Atlanta*, 798 Fed. Appx. 381 (11th Cir. 2019), is misplaced. There, the plaintiff was arrested when filming police conduct "after zooming in on an officer's name and saying it out loud," he alleged that the arresting officer's actions "were aimed at preventing him from continuing to film police activity," and other protestors noted that people in the crowd were being grabbed and arrested "for filming." *Id.* at 387. The court found that reading the facts in the plaintiff's favor, he was arrested "while engaging in protected First Amendment conduct … *specifically to stop him from doing so*." *Id.* at 388 (emphasis added). In contrast to *Toole*, here there is no evidence that the alleged acts which allegedly restricted Plaintiff's ability to exercise her First Amendment rights—the deployment of tear gas and an impact projectile—were done specifically for the purpose of stopping Plaintiff (or others) from peacefully protesting.

## II.        First Amendment Retaliation (Counts III, IV)

Plaintiff raises the *Mt. Healthy* test (DE 170 at 5); Defendants incorporate their arguments in response to Plaintiff's summary judgment motion regarding that issue. (DE 169 at 2-9).

Plaintiff misrepresents the evidence in arguing that "FLPD deployed KIPs and tear gas with the intent to disperse *every* person present at the Parking Garage." (DE 170 at 6). Plaintiff's reliance on Ramos' IA statement is misplaced, as it is undisputed that Ramos did not use tear gas that affected the Plaintiff. (DE 165 at ¶ 40). In addition, contrary to Plaintiff's *assertion*, none of the Non-Ramos Officers have "unequivocally admitted to the allegations in the Third Amended Complaint that KIPs, along with tear gas, were deployed for the primary purpose of dispersing *the crowd*, thereby preventing Ratlieff and others from assembling." (*Id.*) The Non-Ramos Officers denied such allegations in their Answers to the Third Amended Complaint, and Plaintiff's characterization of the evidence in paragraphs 169-172 of DE 171 (*see* DE 170 at 6-7) is inaccurate. (*See* DE 174 at ¶¶ 169-172). Plaintiff also conspicuously omits Defendants Greenlaw and MacDoughall from her discussion. The only deployment that is pertinent to Plaintiff's claims is Ramos' KIP deployment that accidentally struck her, and the evidence is undisputed that dispersing the crowd was not even *a* purpose, much less the *primary* purpose, of Ramos' deployment. (DE 157 at ¶¶ 75-76, 78; DE 147 at ¶¶ 23, 27-28, 30). Similarly, there is no evidence in the record that any of the Non-Ramos Officers specifically ordered or authorized the deployment of tear gas that affected Plaintiff, much less that they did so for the specific purpose of indiscriminately dispersing the entire "crowd" of which Ms. Ratlieff was allegedly a part.

As to Plaintiff's other arguments regarding Defendant Ramos (DE 170 at 7-11), Defendants hereby incorporate Ramos' reply to those arguments (DE 172 at 1-10). Since there was no underlying First Amendment violation by Ramos, there can be no First Amendment claim against the City or Non-Ramos Officers based on his conduct. (DE 160 at 2, ¶ 4).

Plaintiff misstates the evidence as to Dietrich's statements concerning deployment. Dietrich was in distress and advised he was getting rocked and bottled and the SWAT officers were deploying less lethal munitions to mitigate the violence towards them. (DE 156-23 at 17:325-326). Although Plaintiff attempts to construe otherwise, Dietrich related a clear intent to disperse a crowd of *violent agitators*. There is zero evidence that any less lethal munitions were deployed to disperse peaceful crowd members, including the Plaintiff.

Plaintiff relies upon her repeated assertions and a lack of justification for John Doe 1's purported "main" tear gas deployment. The evidence has demonstrated that the Unknown Felon was in the vicinity at the time and criminal acts were occurring just to the west of the area. Videos confirm he previously threw (3) objects at the police. (DE 145 at 3:38; 4:51; 4:59). Assuming John Doe 1 or another officer deployed the canister, such would have been justified to thwart further criminal acts. Plaintiff expert agrees. (DE 174 at ¶ 150). Plaintiff ignores the testimony of Ofc. Rodriguez who responded to an act of violence seconds before the Ramos deployment. (DE 174 at ¶¶147, 158). The evidence does not support Plaintiff's assertion of a tear gas deployment to NW corner of the intersection directed *at her*, versus dispelling and deterring continued threats.

A. **Qualified Immunity.**

As noted by Ramos (DE 173 at 11), Plaintiff discusses "clearly established" law in terms of broad, general propositions. (DE 170 at 12). Plaintiff relies primarily on *Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010), but Defendants have already shown why *Keating* does not control the significantly different facts in this case. (DE 160 at 12-15; DE 169 at 22-24). *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005), also supports the Non-Ramos Officers' entitlement to qualified immunity on the supervisory liability claims and cuts against Plaintiff's argument regarding the officers being at a different location and unaware of Plaintiff's presence (DE 170 at 13). In *Mercado*, the court stated:

> *Officer Rouse was in another room during the incident, and did not see Padilla aim or fire the gun.* She *did not tell Padilla to fire the Sage Launcher at Mercado's head.* Given that Padilla was trained in the proper use of the launcher, that the Department's guidelines prohibited firing the launcher at a suspect's head or neck except in deadly force situations, and that … there is no evidence that Padilla has used similarly excessive force in the past-all of which are undisputed facts in the record-Rouse *could not reasonably have anticipated that Padilla was likely to shoot Mercado in the head either intentionally or unintentionally. Even under the "failure to stop" standard for supervisory liability, Rouse cannot be held liable.*

407 F.3d at 1158 (emphasis added). Plaintiff's reliance on *Williams v. Santana*, 340 Fed. Appx. 614 (11th Cir. 2009), is misplaced; there, the "numerous prior incidents" involving an officer's use of force "were sufficient to put [the supervising officer] on notice of misconduct that was sufficiently 'obvious, flagrant, rampant and of continued duration' to require him to act." *Id.* at 618. Here, there is no evidence that there were any prior incidents suggesting a problem with Ramos or the unidentified John Does 1-3, much less that any of the Non-Ramos Officers were aware of any such problems that would have triggered a requirement to act.

Plaintiff's flippant dismissal of *De Mian v. City of St. Louis*, 86 F.4 1179 (8th Cir. 2023) (DE 170 at 12-13) ignores the fact that the officer's pepper spray was not directed at the plaintiff, but at a different protestor, and that the plaintiff was more than 20 feet away, "near the edge of the arc that he sprayed over the crowd." *Id.* at 1181. Plaintiff also ignores the fact that the plaintiff in *De Mian* complained that there had been no dispersal order prior to the officer deploying the pepper spray. *Id.* Although *De Mian* clearly does not count as "clearly established law" in the Eleventh Circuit, its analysis of the First Amendment claim and qualified immunity is instructive. Plaintiff's statement that this case involves "the entire FLPD force deploying tear gas to disperse the entire crowd assembled" (DE 170 at 13) ignores the fact that this case is not a class action and only concerns the deployments of gas and single KIP that affected Plaintiff.

B. *Monell* **Liability**

Defendants have responded to Plaintiff's factual assertions in DE 174.

5

*Delegation* – Plaintiff states that "the Second Amended Complaint abandoned the delegation theory." (DE 170 at 17). That is strange because the operative pleading is the *Third Amended Complaint* (DE 126) and Plaintiff herself moved for summary judgment on a delegated authority *Monell* theory (DE 159 at 22-23). Now, however, Plaintiff concedes that "there was no delegation" (DE 170 at 17), so the City is entitled to summary judgment on the this theory for that reason and as argued DE 160 (at 17-18) and in response to Plaintiff's motion (DE 169 at 17-19).

*Ratification* – Plaintiff's argument in this section is purportedly fact-based. Defendants have already responded to the same in DE 174.

*Failure to Train* – Plaintiff incorrectly asserts that the George Floyd protest cases have "consistently recognized" that the need to train officers on the use of KIPs before giving it to them to deploy in crowd control is obvious. (DE 170 at 18). The *Johnson* case cited in Defendants' motion (DE 160 at 20) reached the opposite conclusion at the summary judgment stage, and the two cases Plaintiff cites concern motions to dismiss. Further, in *Sanderlin*, the court later granted the city summary judgment on the failure-to-train theory. *Sanderlin v. City of San Jose*, No. 20-CV-04824-BLF, 2023 WL 2562400, at *22-24 (N.D. Cal. Mar. 16, 2023). Furthermore, the evidence here establishes that Ramos, the only officer who fired a KIP that struck the Plaintiff, had been trained in the use of KIPs prior to May 31, 2020. (DE 157 at ¶ 76; DE 147 at ¶ 8).

Plaintiff's discussion of her experts' opinions fails to demonstrate a genuine issue of material fact sufficient to preclude summary judgment against her on the failure-to-train theory. As to Hubbs' opinion that FLPD failed to adequately train officers (DE 170 at 18), "to hold a municipality liable for failure to train it is not enough to show that the training was inadequate. … The city must be on notice that the training was inadequate as well." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1189 (11th Cir. 2011). "A plaintiff must present evidence not only that the municipality was on notice of a need to train but also that the municipality made a choice not to

6

do so." *Id.* Here, Plaintiff has not pointed to any such evidence, nor to any evidence of deliberate indifference on the part of the City. (DE 170 at 18-19). There is no such evidence. (*See* DE 157 at ¶¶ 86-87). In addition, Plaintiff's recital of her retained experts' unsubstantiated legal conclusions as to the supposedly "obvious' need for training (DE 170 at 18-19) is insufficient to create a fact issue. *See Gold v. City of Miami*, 151 F.3d 1346, 1352 n.13 (11th Cir. 1998) ("Gold presented expert testimony that the need for training and/or supervision in these two areas should have been obvious to the City and that the City was deliberately indifferent in not responding. However, an expert's conclusory testimony does not control this Court's legal analysis of whether any need to train and/or supervise was obvious enough to trigger municipal liability without any evidence of prior incidents putting the municipality on notice of that need.").

### III.     Fourteenth Amendment Substantive Due Process (Count V, VI)

"Under substantive due process, the question is whether [Defendants'] use of force shocks the conscience, a more onerous standard of proof than under the Fourth Amendment." *West v. Davis*, 767 F.3d 1063, 1067 (11th Cir. 2014). The "essence of the calculus" on a Fourth Amendment excessive force claim is "reasonableness," but "it is far easier for a plaintiff to show a defendant's behavior was unreasonable than to show it shocks the conscious." *Davis v. Waller*, 44 F.4th 1305, 1317 (11th Cir. 2022). In a non-custodial situation, as here, "only a purpose to cause harm unrelated to the legitimate object of law enforcement satisfies the element of arbitrary conduct shocking to the conscience that is necessary for a due process violation." *McCants v. City of Mobile*, 752 Fed. Appx. 744, 749 (11th Cir. 2018) (Officer's alleged conduct towards mother at scene of her daughter's automobile accident, yelling at and punching her, did not shock the conscience, as required to state a substantive due process claim) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998)). Plaintiff does not show the Defendants' conduct exhibited a purpose to cause harm unrelated to legitimate law enforcement objectives (DE 170 at 19-23).

Plaintiff suggests in conclusory fashion that evidence that FLPD deployed tear gas and KIPs "to disperse the crowd" would be sufficient to "shock the conscience," requiring a jury trial on her Fourteenth Amendment claims. (DE 170 at 20-21). However, the evidence does not establish that the City or Non-Ramos Officers deployed or ordered the deployment of tear gas or the single KIP that affected Plaintiff, *to disperse the crowd*. Rather, the evidence is that to the extent that tear gas and KIPs were authorized and deployed, they were done discriminately and only in accordance with established FLPD policies that are facially constitutional and based on the judgment of the individual officer(s) on the ground, and the deployments were made in response to violent acts (resistance) for the purpose of protecting officers and other, non-violent protestors. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 (11th Cir. 2003), *as amended* (Sept. 29, 2003) (officers' "protective shooting" was not malicious, but "was self-defense and defense of a fellow officer," and "does not rise to the level of egregious conduct that would shock the conscience").

But even if there was evidence that tear gas and Ramos' KIP that affected Plaintiff were deployed with the intent "to disperse the crowd," such conduct would not "shock the conscience" so as to sustain a Fourteenth Amendment claim. (*See* DE 160 at 21-23). In analyzing a similar injury in the less stringent Fourth Amendment context, the Eleventh Circuit held that a plaintiff's "incidental exposure to pepper fumes for a short period of time is not a sufficient basis to state an excessive force claim and thus the district court was correct to render summary judgment on this claim." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011).

Addressing qualified immunity, Plaintiff states that "the individual defendants had fair notice that their conduct was *unreasonable*." (DE 170 at 22) (emphasis added). However, reasonableness is not the standard on a Fourteenth Amendment claim. Plaintiff argues that Ramos "deployed deadly force," citing *Turk*, an unpublished case. (DE 170 at 22). The proposition for which Plaintiff cites *Turk* is actually found in a different case discussed therein, *Mercado v. City*

8

*of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005), where the Eleventh Circuit found that an officer violated the Plaintiff's *Fourth Amendment* rights "when he intentionally aimed at and shot Mercado in the head with the Sage Launcher." In *Mercado*, the evidence supported a finding that the officer "intentionally aimed for Mercado's head," especially since he fired from a distance of only six feet. *Id.* at 1161. Such is not the case here, where the evidence establishes that Ramos was not aiming at Ratlieff at all, but rather, between the nipple and waistline of a person who had thrown a venting gas canister at the police. (DE 157 at ¶¶ 75-76, 78; DE 147 at ¶¶ 23, 27-28, 30). Plaintiff's argument regarding tear gas canisters thrown high in the air and posing a risk of hitting someone in the head is not relevant, as there is no evidence that Ratlieff was struck by a gas canister or that any officer threw a gas canister at or toward her.

As did the plaintiff in *Reed v. Clough*, 694 Fed. Appx. 716 (11th Cir. 2017), Plaintiff here "cites a variety of cases for the proposition that an officer may not shoot a suspect posing no danger to him or others." *Id.* at 726. (DE 170 at 22). While that much "is axiomatic," those cases are factually distinguishable and each of the cases, like those in *Reed*, "was decided under the Fourth Amendment and not under the more stringent Fourteenth Amendment standard applicable to this case." *Reed*, 694 Fed. Appx. at 726. As such, they do not constitute clearly established law for purposes of a Fourteenth Amendment substantive due process claim. Furthermore, Plaintiff's emphasis of inflammatory language used *by non-party officers* (DE 170 at 23) to support the notion that unspecified "FLPD officers were not engaged in any legitimate law enforcement purpose" (*id.* at 22) is neither relevant nor probative to the substantive due process claims against the Non-Ramos Officers or their entitlement to qualified immunity on such claims.

As to clearly established law, this Court noted in 2021 that "the only two published decisions in which the Eleventh Circuit *has* found that a defendant's conduct 'shocked the conscience' involved violent and intentional physical assaults by teachers against children." *625*

*Fusion, LLC v. City of Fort Lauderdale*, 526 F. Supp. 3d 1253, 1271 (S.D. Fla. 2021). "[T]he Eleventh Circuit has time and again made clear that only a very narrow range of governmental conduct will 'shock the conscience'—a list that, for instance, doesn't even include a state-employed college professor's violent and intentional battery against a student or a firefighter's sexual assault of an apprentice." *Id.* "Even death itself, in fact, sometimes fails to meet this (very) high bar." *Id.* at 1272 (citing *Sacramento*, 523 U.S. at 833 (finding that a police officer's "conscious disregard" of the risk of death to another motorist was not conscience shocking)). Here, Plaintiff has not overcome the Non-Ramos Officers' entitlement to qualified immunity.

### IV.     Procedural Due Process (Counts XIV, XV)

Plaintiff incorporates her procedural due process analysis from her summary judgment motion (DE 170 at 23), and Defendants hereby incorporate their response to her analysis. (DE 169 at 9-14). Plaintiff's reliance on state law providing governmental immunity for killing someone during an unlawful riotous assembly (DE 170 at 23) is misplaced, as no one was killed here and requirements for immunity are not tantamount to due process.

In response to Plaintiff's arguments regarding procedural due process, Defendants incorporate the arguments from their response to Plaintiff's summary judgment motion (DE 169 at 9-14, 19-21). Plaintiff's argument that it was "feasible" for "FLPD" to inform the demonstrators "that they had determined the assembly was unlawful, riotous, or tumultuous before Ms. Ratlieff's shooting" (DE 170 at 24) is based on a false premise, as no "assembly" had been determined to be unlawful at the time Plaintiff was struck. (*See* DE 169 at 20). Plaintiff acknowledges that there are "extraordinary situations" where "some valid governmental interest is at stake that justifies postponing the hearing until after the [deprivation]." (DE 170 at 24) (citation omitted). Here, unquestionably there was a valid governmental interest at stake in protecting police officers and non-violent protestors. Moreover, Plaintiff's "feasibility" argument is unconvincing, especially

since the evidence establishes that tear gas had already been dispersed in the vicinity of the subject intersection at the time Plaintiff arrived there, and she chose to stop and remain in that area despite the fact that she heard sounds of popping weapons and saw tear gas. (DE 156-5 at 106:7-18; 109:4-13). It would not have been feasible for FLPD to provide any form of "notice" to the Plaintiff when gas had been deployed before her arrival, which she was aware. The undisputed evidence also establishes that there was no opportunity for Ramos to provide pre-deprivation notice to Plaintiff before discharging his KIP round. Thus, the *McKinney* analysis governs, despite her protestations.

In response to Plaintiff's argument that the Defendants cited cases where conversion provided an adequate post-deprivation remedy (DE 170 at 26), Defendants direct the Court to the cases where courts have rejected procedural due process claims arising out of tear gas injuries based on the availability of adequate post-deprivation remedies (DE 169 at 10-11), including actions against a police officer's employer for a tort committed by the officer during the performance of his official duties. *See Young v. Akal*, 985 F. Supp. 2d 785, 804 (W.D. La. 2013); *cf.* § 768.28(9)(a), Fla. Stat.

## V.   Fourth Amendment (Count VIII[1])

Plaintiff asserts that video footage shows her "freedom of movement was terminated because of the tear gas." (DE 170 at 27). Plaintiff incorrectly focuses only on *the effect* of the tear gas. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) ("It is clear … that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby) … ."), *quoted in*, *West v. Davis*, 767 F.3d 1063, 1068 (11th Cir. 2014). A seizure, however, requires the use of force *with intent to restrain*." *Torres v. Madrid*, 141 S.Ct. 989, 998 (2021). Force "intentionally applied for some other

---

[1] Plaintiff's Response references Count VII (DE 170 at 27), but that count is only directed against still-unidentified John Does 1-3 and is not part of the City and Non-Ramos Officers' Motion.

purpose" does not satisfy that rule. *Id.* While Plaintiff urges that the officer's "subjective intent to disperse" is irrelevant, Plaintiff has not shown and cannot show that the deployment of the tear gas or impact projectile that affected her *objectively manifests an intent to restrain* her. *See id.* (noting that "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain"). It does not. (*See* DE 160 at 28-29). *Cf. Dundon v. Kirchmeier*, 85 F.4 1250, 1257 (8th Cir. 2023) (concluding it was not clearly established that "use of force to disperse the crowd was a seizure"). Construing the facts in the light most favorable to Plaintiff, it is impossible to "see how a reasonable person in [Ratlieff's] position would not have believed that [s]he was free to leave at any time." *O'Boyle v. Thrasher*, 638 Fed. Appx. 873, 877 (11th Cir. 2016). Plaintiff ignores her own testimony that she voluntarily entered an area where tear gas had already been deployed. (DE 157 at ¶69). *See Sanderlin v. City of San Jose*, No. 20-CV-04824-BLF, 2023 WL 2562400, at *8 (N.D. Cal. Mar. 16, 2023) (As to the tear gas theory, plaintiff "states that she walked into an area where tear gas was already present. … She therefore cannot show that the officers intentionally applied tear gas to her. Plaintiff … therefore cannot show she was seized.").

Plaintiff contends that the City "misrelies" on *Rauen* and *Jennings* (DE 170 at 27), but Defendants' Motion does not cite or rely on them in discussing the Fourth Amendment claim. (DE 160 at 26-29). Plaintiff briefly argues there was a seizure because she was "not free to remain in a public place of her choosing," citing *Florida v. Bostick*, 501 U.S. 429, 436 (1991). (DE 170 at 28). The *Bostick* scenario is not applicable here, though, since it is undisputed that there were no police requests of Ratlieff or attempts to search or question her, and there is no evidence that she was not free to terminate any "encounter" with the police. *Bostick*, 501 U.S. at 436. In *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831 (8th Cir. 2021), the plaintiffs also argued they were seized "because they could not stay in their chosen location," citing *Brendlin* (which discusses *Bostick*) and *Brower*, but the court noted that such cases did not give fair warning that deploying tear gas

is a seizure where the plaintiffs "were dispersed." *Id.* at 840. As in *Quraishi*, here, Plaintiff has not offered any case in which a court has determined that the deployment of tear gas or impact munitions constitute a seizure under a "not free to leave" analysis. The Court should decline the invitation to do so in this case.

## VI. Battery (Counts IX, X)

Plaintiff incorporates the argument regarding the battery claims from her own summary judgment motion (DE 170 at 28), and the Defendants hereby incorporate their response to Plaintiff's argument. (DE 169 at 24-27). As to the Non-Ramos Officers, Plaintiff's Response (DE 170 at 28-29) ignores her concession in her own summary judgment motion that "[t]here are no disputed issues of fact that the defendants were acting inside the scope of their employment and were *not* acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (DE 159 at 29) (emphasis added). In light of that dispositive admission, the Non-Ramos Officers are entitled to immunity under § 768.28(9)(a), Fla. Stat., regardless of Plaintiff's later argument about another allegedly "disputed fact" (DE 170 at 29). The Non-Ramos Officers are entitled to summary judgment on the battery claim in Count IX.

Plaintiff's Response incorrectly asserts that "[o]ther than Defendant Dietrich, the non-Ramos defendants do not dispute that they gave orders substantially certain to result in the battery against Ratlieff alleged." (DE 170 at 29). While Plaintiff cites page 30 of the Defendants' Motion (DE 160) for that proposition, nothing on that page or elsewhere in the Motion supports that contention. Moreover, Defendants have expressly argued to the contrary. (DE 160 at 32; DE 169 at 26-27). Plaintiff falsely asserts that the City "says" Dietrich gave an order to deploy force. (DE 170 at 29). Plaintiff cites paragraph 208 of her "PRSMF" (*id.*) which presumably refers to DE 171. However, paragraph 208 of DE 171 does not support that contention. If Plaintiff intended to cite ¶ 207, which seems likely, Plaintiff's cite does not support her assertion. (*See* DE 174 at ¶ 207).

Plaintiff's assertion that "FLPD deployed tear gas and KIPs against everyone present, to effectuate their plan to clear the street" (DE 170 at 29, 30) (citing DE 171 at ¶¶ 163-173) is not an accurate characterization of the evidence. (*See* DE 174 at ¶¶ 163-173).

Plaintiff's reliance on *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F. Supp. 1549 (S.D. Fla. 1996), to support a "concert of action" theory on the battery claim (DE 170 at 29) is misplaced. As an initial matter, Plaintiff does not plead a "concert of action" theory in her battery claims. (DE 126 at 60-62, ¶¶ 392-409). Further, in 1990, the Florida Supreme Court declined to adopt the "concert of action" theory in products liability cases and indicated that the decision to adopt such a theory must be based on its appropriateness in the type of case at issue. *See Conley v. Boyle Drug Co.*, 570 So. 2d 275, 280-81 (Fla. 1990). The Florida Supreme Court has not adopted this theory in police liability cases involving battery claims and it is unclear whether it would do so, and no Florida appellate court has recognized the theory as viable either.

Even if Florida did recognize a "concert of action" theory of liability for alleged battery by police officers, the evidence demonstrates that such a claim must fail under the facts in this case. Here, Plaintiff has not been able to identify the alleged officer or person who deployed tear gas that affected her, and the Florida Supreme Court has "never approved" a concert of action theory of liability "in cases where the plaintiff has been unable to identify the specific tortfeasor." *Ray v. Cutter Labs., Div. of Miles, Inc.*, 744 F. Supp. 1124, 1127 (M.D. Fla. 1990) (cited in *Vernon*); *see also Valderrama v. Rousseau*, No. 11-CIV-24637-COOKE/TURNOFF, 2012 WL 12925174, at *6 (S.D. Fla. Sept. 18, 2012) ("Under Florida law, concert of action is proven when a specific wrongdoer can be identified."). In addition, "proof of causation is still required" and "Plaintiff's inability to make this proof renders concert of action … inapplicable." *Ray*, 744 F. Supp. at 1127. Here, there is no proof that either Ramos, the unidentified John Does 1-3, or any other FLPD

officer deployed tear gas or impact projectiles that affected Plaintiff pursuant to any alleged orders or directives from the Non-Ramos Officers who are alleged to have committed battery.

The *Vernon* court dismissed the plaintiff's "concert of action" claim, finding that the plaintiff had not alleged that the defendants formulated a "common plan" to engage in harmful or offensive contact with the plaintiff. 912 F. Supp. at 1556. Here, there is no evidence supporting the existence of any "common plan" among Ramos, John Does 1-3, and each of the individual Non-Ramos Officers, much less a common plan "to commit a tortious act." *Id.*; *see also Btesh v. City of Maitland*, No. 6:10-cv-71-Orl-19DAB, 2010 WL 2179126, at *4 (M.D. Fla. June 1, 2010) (dismissing battery claim based on concert-of-action theory where plaintiff did not plead facts plausibly establishing that officer who did not shoot plaintiff acted "in pursuance of a common plan or design" with the other officer to shoot plaintiff).

As to the City, Plaintiff incorrectly asserts that the City "does not dispute that Ratlieff was tear gassed by one of its employees." (DE 170 at 30). However, even if Ratlieff was, in fact, subjected to tear gas by a City employee, that does not constitute a battery. Plaintiff must prove the requisite intent to sustain a battery claim. Since Plaintiff has not been able to identify the person or persons who deployed or threw tear gas that actually affected her, there is no evidence of that person or persons' intent. As already discussed at length elsewhere, since the evidence establishes that neither Ramos nor the Non-Ramos Officers battered Ratlieff and since there is no evidence that the unidentified John Does 1-3 battered her, Plaintiff cannot sustain her battery claim against the City in Count X, and the City is entitled to summary judgment on that claim.

## CONCLUSION

The Court should grant the City and Non-Ramos Officers summary judgment on Counts I through VI, VIII through X, XIV, and XV of the Third Amended Complaint.

**Response to Plaintiff's Request for Oral Argument**

Defendants submit that a hearing is not necessary for determination of the issues presented in their Motion or Plaintiff's Response.

Respectfully submitted, this 16th day of February, 2024.

/s/ *Jeffery R. Lawley*
Jeffery R. Lawley, Esq.
Fla. Bar No. 0596027
jrl@bclmr.com
BILLING, COCHRAN, LYLES,
   MAURO & RAMSEY, P.A.
Las Olas Square, Suite 600
515 E. Las Olas Blvd.
Fort Lauderdale, Florida 33301
Phone: 954-764-7150
Fax: 954-764-7279
**Counsel for Defendants,**
*Attorneys for Defendants, City of Fort Lauderdale, Paul Cristafaro, Steve Greenlaw, Avery Figueras, Douglas MacDoughall, Robert Dietrich, and Rick Maglione*

I HEREBY CERTIFY that on this 16th day of February, 2024, I electronically filed a true and correct copy of the foregoing with the Clerk of the Southern District of Florida, by using the CM/DE system.

By: /s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Fla. Bar No. 0596027
jrl@bclmr.com